**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

CONTINENTAL CASUALTY     :
COMPANY, an Illinois
Corporation,               :

     Plaintiff,          :

vs.                              CA 04-0766-KD-C

                            :

COMPASS BANK,

                            :

     Defendant.

## <u>ORDER</u>

This cause is before the Court on plaintiff's omnibus motion for sanctions (Doc. 158), the defendant's response (Doc. 167), plaintiff's reply brief in further support of the omnibus motion (Doc. 172), defendant's objection to plaintiff's motion for leave to file a reply brief in support of its omnibus motion (Doc. 174), plaintiff's response to defendant's objection (Doc. 189), plaintiff's supplemental submission in further support of its omnibus motion for sanctions (Doc. 233), defendant's response to plaintiff's supplemental submission (Doc. 239), and plaintiff's motion for leave to file reply brief in support of its supplemental submission (Doc. 241)[1]. Having

---

[1]      This motion is **GRANTED** except that, as explained, *infra*, the undersigned has not considered any document attached to plaintiff's supplemental submission besides the supplemental testimony of Branson.

considered the contents of all of these pleadings,[2] this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a).

Through this omnibus motion for sanctions, plaintiff seeks serious sanctions against Compass, including entry of judgment, striking of defenses or other appropriate relief, based upon what plaintiff characterizes as Compass Bank's spoliation of evidence, violation of discovery and sanction orders, and submission of false affidavits to the Court. (Doc. 158)

> [A]s to Compass' spoliation of evidence, after months of unsuccessful attempts to ascertain basic account information as to Elaine Howe's fraud account - including multiple motions to compel and court orders requiring the production of such

---

In addition, in preparing this order the undersigned has given no consideration whatsoever to the February 23, 2006 letter copied to the Court by defense counsel. If this letter was intended as a "filing" in relation to the omnibus motion for sanction, it was not authorized. *Compare* SD ALA LR 5.1(d) ("A request for court action should be submitted in the form of a motion, petition or other pleading as authorized by statute or rule. Requests for court action may not be submitted in the form of a letter.") *with* SD ALA LR 5.5(a) ("Initial disclosures, expert witness disclosures, pretrial disclosures, interrogatories, requests for production, requests for admissions and responses thereto, and notices of depositions shall be served in accordance with Fed.R.Civ.P. 5(b), but shall not be filed with the clerk unless otherwise ordered by the court or for use at trial or in connection with motions.") *and* SD ALA LR 5.5(c) ("If discovery materials are germane to any motion or response, only the relevant portions of the material shall be filed with the motion or response.").  Moreover, as reflected by the plaintiff's motion to strike (Doc. 254), the defendant's tardy disclosure of the documents attached to defense counsel's letter of February 23, 2006 is irrelevant to the pending omnibus motion for sanctions. Because the undersigned has not considered defense counsel's February 23, 2006 letter, plaintiff's motion to strike same (Doc. 254) is found to be **MOOT**.

[2]      Despite defendant's objection to plaintiff's motion for leave to file a reply brief in support of its motion for sanctions (Doc. 189), the undersigned has considered plaintiff's reply brief (Doc. 172).

information and imposing sanctions – Continental has recently learned through the admission of a Compass employee that Compass altered its records in late May or June 2002 to delete "c/o Radney Funeral Home" from the account name. This deletion came after Howe had been arrested, after Compass had turned away SCI's fraud investigator when he requested information about Howe's fraud scheme, and even after Compass had received a subpoena from the Mobile District Attorney's office on May 16, 2002 for Howe's records.

After Continental learned of this inexplicable destruction of key evidence, its counsel attempted to question Compass' Rule 30(b)(6) witness about this deletion, as well as other topics. The witness, having admitted that she had looked at but a handful of documents for one of Howe's eight accounts at Compass and prepared for only a couple hours, was utterly unable to testify as to Compass' knowledge regarding this deletion, nor many other topics. As a matter of law, this constitutes a failure to appear for the deposition by Compass and calls for sanctions.

In addition to destroying evidence or failing to provide required testimony, Compass has withheld relevant documents and even taken the further step of providing false information in the form of affidavits submitted to this Court. Specifically, Compass has submitted affidavits from its personnel claiming that account opening documents for Howe's accounts are unavailable, but its own employees have admitted under oath that such documents would have been maintained in Compass' Birmingham office since at least the time of law enforcement subpoenas in May and September 2002. Despite repeatedly representing and affirming to the Court that certain relevant documents did not exist, Compass recently provided certain of these very documents at the close of fact discovery, after all pertinent fact depositions of Compass were taken, and after the opportunity to question any Compass personnel about such documents had expired (other than one fact witness and under a Rule 30(b)(6) notice).

3

Viewed separately or in totality, these numerous acts of discovery abuse by Compass have effectively thwarted Continental's efforts to uncover the truth of this fraud scheme and Compass' full involvement therein, and to properly support its summary judgment motion, oppose Compass' similar motions, and otherwise prepare for trial. Moreover, Compass' conduct has violated the rules of discovery and direct orders of this Court. As a result, Continental now seeks the strongest sanctions available to the Court to attempt to remedy Compass' continual and flagrant abuse of discovery and the judicial process in this case.

(Doc. 158, at 1-3 (footnote added)) Consideration of plaintiff's allegations requires some factual development.

## FINDINGS OF FACT

1. On February 24, 2005, plaintiff propounded its first set of interrogatories and first request for production of documents. (Doc. 15) Among the interrogatories propounded by plaintiff were the following:

INTERROGATORY NO. 3:

Identify (a) all other accounts (whether bank, brokerage, trust or other) and all loans or other credit facilities relating to the Customer(s) and/or the Insured, and all other relationships between you and the aforementioned persons or entities; (b) all documents that refer or relate thereto, including but not limited to, all account cards, agreements, loans, and any other opening, modifying, or closing documentation; and (c) each of your employees, past or present, who had personal knowledge of the Customer(s) or the Insured, and/or their banking or other relationship activities, and as to each such person or entity, describe such knowledge.

.      .      .

## INTERROGATORY NO. 10:

Identify each of your employees, past or present, who handled or reviewed any of the Relevant Checks by identifying (a) each of the Relevant Checks that each such employee handled or reviewed and (b) each employee whose initials or markings appear on any of the checks or deposit or cashing checks.

(*Compare* Doc. 26, Exhibit A, PLAINTIFF'S FIRST SET OF INTERROGATORIES TO COMPASS BANK *with* Doc. 39 (plaintiff's motion to compel)) In addition, among the request for production of documents were the following:

## REQUEST NO. 5:

Produce all documents referring or relating in any way to any investigation or review conducted by you or anyone else of the matters alleged in the Complaint or your Answer, including, but not limited to, all statements, reports, notes, and email.

.      .      .

## REQUEST NO. 7:

Produce (a) the original signature card(s), (b) all branch, operations center, and other copies of the signature card(s), (c) computerized or electronic signature card data, and/or (d) any microfilmed, microfiche, or scanned signature card(s) for the Relevant Account(s).

5

REQUEST NO. 8:

Produce all account opening documentation for the Relevant Account(s), including but not limited to (a) any microfilmed, microfiche, or scanned account opening documentation, (b) any corporate resolutions, articles of incorporation, or business licenses that were obtained, (c) any computerized data from any Chex Systems or similar inquiry, (d) any verification of tax identification number, and (e) any other verification or due diligence performed.

REQUEST NO. 9:

Produce all documents referring or relating to the Relevant Account(s) in any way, including, but not limited to, customer profile(s), agreements, correspondence, change-of-address forms, and any other documents reflecting any changes to or closing(s) of the Relevant Account(s).

.       .       .

REQUEST NO. 11:

Produce copies of all monthly statements for the Relevant Account(s).

REQUEST NO. 12:

Produce copies, front and back, along with any deposit or cash slips of: (a) all the Relevant Check(s); and (b) all other checks $5,000 or greater deposited to and drawn on the Relevant Account(s) during the Relevant Period.

.       .       .

REQUEST NO. 18:

Produce all teller transaction reports or similar documents

6

identifying tellers by transaction with respect to (a) the Relevant Checks, and (b) all withdrawals [of] $5,000 or greater on any of the Relevant Accounts.

.     .     .

REQUEST NO. 23:

Produce all manuals, guides, materials, or other documents (whether policy, procedural, operational, or otherwise and including cover pages, tables of contents, indexes, and revisions thereto) for the Relevant Period concerning or relating in any way to:

(a)     the opening and operating of deposit accounts;

(b)     the handling and/or acceptance of checks for deposit or cashing; and

(c)     the avoidance or detection of check fraud, "Know Your Customer," and/or Bank Secrecy Act policies and procedures.

.     .     .

REQUEST NO. 25:

Produce all training guides, materials, or documents (including cover pages, tables of contents, indexes, and revisions thereto) for the Relevant Period concerning or relating in any way to:

(a)     the opening and operating of deposit accounts;

(b)     the handling and/or acceptance of checks for deposit or cashing; and

7

>       (c)     the avoidance or detection of check fraud,
>       "Know Your Customer," and/or Bank Secrecy
>       Act policies and procedures.

.       .       .

<u>REQUEST NO. 28:</u>

>       Produce all audit reports and documents for the Relevant
> Period relating to:

>> (a)     the opening and operating of deposit
>> accounts;

>> (b)     the handling and/or acceptance of checks
>> for deposit or cashing;

>> (c)     the avoidance or detection of check fraud,
>> "Know Your Customer," and/or Bank Secrecy
>> Act policies and procedures;

>> (d)     the Relevant Account(s); and

>> (e)     the branches or operations units where the
>> Relevant Account(s) were opened and/or the
>> Relevant Checks were deposited or reviewed.

(*Compare* Doc.26, Exhibit B, PLAINTIFF'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS *with* Doc. 39 (plaintiff's motion to
compel))

>       2.      Compass Bank filed an objection to certain of the discovery
requests on March 21, 2005, on the basis that "[s]uch production by the bank
without an order of the court requiring such production would or could expose

the bank to liability for violation of the bank's responsibilities under the *Gramm-Leach-Bliley Act*, 15 U.S.C. § 6801(a)." (Doc. 19) Thereafter, plaintiff filed a motion for entry of a discovery order related to the requested documents and defendant's objection (Doc. 26).

3.     Following the entry of a protective order sought by the defendant, and agreed to by the plaintiff (*see* Doc. 29), the undersigned, on April 6, 2005 granted the plaintiff's motion for entry of a discovery order (Doc. 31).

> Those specific objections to the interrogatories and requests for production of documents listed in plaintiff's motion and more specifically identified in Doc. 26, Exhibit C, are **OVERRULED** because the Court finds that the information is relevant to the issues raised in this action and should be produced pursuant to the terms of the Protective Order (Doc. 29) entered on April 5, 2005.
>
> Accordingly, Defendant, Compass Bank, shall respond to Interrogatories Nos. 2-6 and 9-11 and Requests for Production Nos. 3, 7-16, 18-22, and 34-36 not later than **April 22, 2005**.

(*Id.*)

4.     Plaintiff filed its first motion to compel discovery on April 27, 2005, therein seeking more comprehensive answers to interrogatories 3 and 10, from plaintiff's first set of interrogatories to Compass Bank, and additional production of documents from the defendant relative to requests for production

9

5, 7, 8, 9, 11, 12, 18, 23, 25 and 28 of plaintiff's first set of requests for production to Compass Bank. (Doc. 39) On May 20, 2005, the undersigned entered an order which granted in part and denied in part plaintiff's motion to compel. (Doc. 51)

> After consideration of [all pleadings and the comments of counsel], it is determined that sufficient evidence has not been presented that would require an order compelling the production of the information and documents identified in plaintiff's motion. The evidence was sufficient[,] however, to require Compass to conduct a second inquiry into whether it has disclosed a complete copy of the relevant signature cards and other "account opening documents" and to provide plaintiff's counsel with a certification by the appropriate agent/agents of Compass that describes the search efforts that were made to discover potential evidence now alleged to be unavailable. Thus, the motion to compel was orally **GRANTED IN PART AND DENIED IN PART** on May 17, 2005.

.    .    .

> Compass has responded to plaintiff's discovery requests by answering, in part, the interrogatories and also by producing approximately 3,300 documents. In defense of its inability to produce all information and/or documents requested, Compass represents that it does not have possession, custody and control of many of the documents and was not able to provide much of the information sought through interrogatories 3 and 10. Clearly, the primary reason given by Compass as to why it has not been able to produce[] a significant portion of the information identified in the motion to compel, and then discussed during oral argument, is that it cannot produce that which it does not have. These written assertions, that most of the information requested never existed or is no longer available, were affirmed and restated during oral argument by Mr. Walker.

10

Continental responds with the argument that these defenses to the motion to compel are not credible and therefore, should be rejected. In other words, the circumstances pointed to by plaintiff show that Compass has negligently or intentionally withheld discoverable information and/or documents. As stated during oral argument, it is the opinion of the undersigned that the present evidence does not support such an inference and the order requested should not be entered without additional proof of misconduct.

Although the Court does not believe that the information submitted by plaintiff, either in writing or presented during oral argument, is sufficient to require the entry of a "prophylactic order" requiring the production of information to which Compass forcefully denies having access, it is sufficient to require a follow-up production of information by Compass. For these reasons, the motion to compel, **is denied without prejudice to being renewed once plaintiff reviews the information ordered produced herein and has the opportunity to conduct more discovery.**

In keeping with this decision, Compass shall produce the following additional information with regard to the current discovery requests not later than May 25, 2005, a date suggested by its attorney. First, Compass has agreed to take a second look at its production of signature card information. The specific question is whether the entirety of information was copied from the cards and produced to plaintiff's counsel. If the disclosure as to the signature cards and other account-opening documents was incomplete, Compass is to supplement its disclosure not later than **May 25, 2005.**

Secondly, when discussing the problem of illegible checks and deposit slips, Mr. Walker offered, and counsel for plaintiff accepted, the invitation to allow Mr. Jordan immediate access to the information in his possession in an attempt to resolve the problem of illegible copies. If this inspection by Mr. Jordan does not correct the problem, plaintiff's counsel shall be

given access to the microfiche film from which the produced documents were copied.

Turning to all information and/or documents that fall into the broad category of being unavailable for the reasons articulated by Mr. Walker, Compass shall provide a certification that the information is unavailable. The certification shall contain specific reasons as to why certain information or documents were not kept in its normal course of business and further, if documents were kept, the extent of the search for those documents and the attendant reasons as to why they were not found or are no longer available.[3] This certification is to be prepared for plaintiff's review not later than **May 25, 2005.**

Subsequent to May 25, 2005, plaintiff should, within a reasonable time, resume its deposition schedule, and if, after the conclusion of the depositions of those agents of Compass who would have specific knowledge of the records kept by Compass as well as its policies and procedures with regard to each category of records, **it may ask the Court to revisit the argument that Compass has improperly destroyed or withheld discoverable documents and/or information. If plaintiff does renew its motion to compel within the discovery period, a second review will be made after affording Compass an opportunity to respond to any new evidence or arguments presented by Continental**.

*Conclusion*

For those reasons articulated during the lengthy hearing held on May 17, 2005, plaintiff's motion to compel Compass to supplement its interrogatory answers and produce additional documents is DENIED IN PART. Other than for the information

---

[3]     "If documents are unavailable because they have been destroyed, Compass shall state the date of destruction, the method of destruction and the specific reasons the documents were destroyed. This applies to electronic documents as well as paper documents." (Doc. 51, at 7 n.3)

ordered produced herein, Compass is not compelled to provide additional responses at the present time. **This partial denial of the motion to compel is without prejudice to plaintiff seeking the same or similar relief once it has received and reviewed a certification to be provided by Compass no later than May 25, 2005, so long as the request for a second review of issues raised in this motion to compel is accompanied by additional evidence and is filed within the discovery period**.

(*Id.* at 1-2 & 5-8 (footnote in original; emphasis supplied))

     5.     Defendant's response to the foregoing order reads, in relevant part, as follows:

     B.     *Account opening documents*. Defendant has no documents associated with the opening of any of the Howe accounts other than copies of certain signature cards that were produced well before the motion to compel was filed, along with a signature card for one of the two recently identified accounts. Account opening documents are not generally retained once the information therein has been keyed into the bank's C-Net computer system, in which such information is retained. (*See* affidavits of Cassaundra Franklin and Nina Wilkinson, attached hereto as Exhibits C and D). Since the retention schedule calls for retention of new account start-up forms for only 24 months, and since Ms. Howe's most recent account opening was almost five years ago, there would be no reason to expect to find existing copies of any such documents.

.     .     .

     **2.     Requests for Production.**

     A.     *Investigation*. The affidavits of Erica Matthews[4]

---

[4]     Matthews' affidavit reads, in relevant part, as follows:

---

I am employed by Compass Bank as a Research Manager. In that capacity, I am familiar with the practices and procedures followed by the Subpoena Department at Compass Bank. . . . [T]he information provided in this affidavit is based upon my own personal knowledge or from information that I developed from my research of bank documents.

In response to a request from Compass Bank's Legal Department, I searched the subpoena log books from January 2000 to the present in an effort to locate subpoenas that were served regarding Elaine Howe's account. I located two subpoenas, one served on May 16, 2002 and the other served on September 19, 2002. Copies of those subpoenas and their accompanying subpoena logs are attached hereto as Exhibits A and B respectively. I also located a separate subpoena log referencing Elaine Howe, a copy of which is attached hereto as Exhibit C. These are all of the documents that I was able to locate in the Subpoena Department records with regard to Elaine Howe.

I also sought records maintained in the record retention department, and I located a file that contained an e-mail transmission from David Whitehurst regarding the subpoena. A copy of that e-mail is attached hereto as Exhibit D. I am awaiting a response from my effort to access records from the Compass Bank warehouse area; if there are additional records or documents there that relate in any way to either of these subpoenas, I will supplement this affidavit to describe them.

After receiving a subpoena, the Subpoena Department first verifies that a subpoena is a valid subpoena, then the subpoena is reviewed to determine what information is being requested. If a subpoena requests a large volume of information that may be costly or overly time consuming to produce, the practice in the department is to contact the issuing agent in an effort to reduce the overall request and to also confirm with the agent that all the information is needed. Generally, there are no documents maintained by the Subpoena Department in response to a subpoena other than the subpoena log and the subpoena itself.

I am also familiar with the retention policies and practices for check and deposit slip items maintained by Compass Bank on microfilm. The bank has a seven year record retention schedule for such documents. After seven years, the microfilm containing copies of such documents are boxed up and are picked up by the bank's record retention vendor, a company named Iron Mountain, which is then responsible for destroying the microfilm. I do not know precisely how the microfilm is destroyed.

and David Whitehurst, which are attached hereto as Exhibits E and G, detail the handling at Compass Bank of the subpoenas issued in 2002 by the State of Alabama for Elaine Howe's records, and such affidavits have attached to them copies of the bank's file materials from the Research Department and the Corporate Security Department that relate to such subpoenas. All such documents were generated after the cessation of the check fraud scheme, and none of the documents appear to have any relevance to plaintiff's claims in this case.

B.     *Signature cards and related documents*.   The available signature cards have been produced, and the reasons for lack of any other information are detailed in the affidavits of Cassaundra Franklin and Nina Wilkinson.

C.     *Account opening documentation*.   No account opening documentation is presently available with regard to Elaine Howe's accounts, which were opened between five and seventeen years ago, for the reasons set forth in the affidavit of Cassaundra Franklin. **Whether any such documentation was ever completed in connection with the opening of any of Howe's accounts is unknown.**

D.     *Customer profile documents*.   Compass produced all of its customer profile information on Elaine Howe prior to the filing of the motion to compel. As noted in the affidavit of Cassaundra Franklin, the customer information in the bank's C-Net computer system is keyed in to the system by branch personnel who obtain the information from the customer.

.     .     .

**3.     Specific questions of the court.**

A.     *Was the entirety of the information on Howe's signature cards produced to plaintiff?*   Yes. *See* affidavit of

---

(*See, e.g.,* Doc. 58, Affidavit of Erica Matthews)

Nina Wilkinson.

B.    *Why are some documents sought by plaintiff no
longer available? See* affidavits of Cassaundra Franklin (Exhibit
C), Nina Wilkinson (Exhibit D), Erica Matthews (Exhibit E),
John W. McNichol, Jr. (Exhibit F), and Seavey Webb (Exhibit
H).

(Doc. 53, at 2, 4 & 7)

6.    On June 17, 2005, plaintiff filed a motion to enforce the

discovery order entered by the undersigned on May 20, 2005 and for sanctions

(Doc. 67), primarily on the basis that defendant had failed to specify the

method, and perhaps the date, of destruction of teller tapes, checks and deposit

slips, account opening documents, monthly statements, and customer profile

information (*id*. at 3-7). In addition, plaintiff contended that the defendant's

affidavits failed to establish certification by the most knowledgeable agent.

(Doc. 67, at 7-10) Following consideration of this motion, as well as the

defendant's response (Doc. 75), the Court entered an order on July 27, 2005

granting in part and denying in part plaintiff's motion (Doc. 97).

[T]he Court finds nothing in its order of May 20, 2005 which
requires certification by Compass Bank's most knowledgeable
agent and, therefore, the Court has no basis upon which to
sanction Compass in this regard. In addition, the order does not
impose upon Compass the duty to poll all of its current
employees regarding teller numbers and because plaintiff's
counsel does not support his recollection that the Court gave
such direction to Compass Bank, the undersigned cannot

16

sanction Compass in this regard.[5]

This Court also cannot sanction Compass Bank for its failure to respond to plaintiff's counsel's request for further information regarding whether information regarding customer profiles, which is stored electronically on its "C-Net" system, is archived in its "Mobius" system. While it certainly would have been more cooperative of Compass to provide such information to Continental, the plaintiff simply has not identified any portion of the Court's May 20, 2005 order transgressed by Compass Bank's refusal to provide such information; therefore, Compass Bank cannot be sanctioned in this regard either.

What is left of Continental's arguments are the four regarding the defendant's failure to certify the date and method of destruction of relevant documents (teller tapes, check and deposit slips, and account opening documents) it destroyed or the specific reasons for such destruction (i.e., specifically, with respect to monthly statements). Compass responds that the teller tapes were destroyed by an independent contractor and, therefore, it could not "provide any certification as to the manner of their destruction." The defendant contends that its failure to certify the manner of destruction of the teller tapes, and, therefore, the dates thereof, is basically harmless since it provided plaintiff with all the deposit slips relating to Elaine Howe's transactions and such slips contain the same information which could have been recorded on the teller tapes. Whether harmless, or not, by making such argument Compass is admitting that it did not follow the explicit dictates of this Court's May 20, 2005 order. Again, the Court stated that if documents are unavailable because they have been destroyed, "Compass **shall** state the date of destruction, the method of destruction and the specific reasons the documents were

---

[5]     "Counsel for Compass Bank has informed the Court that it polled all former tellers it still employs regarding teller numbers and has supplied this information to Continental. Defendant, therefore, has been relatively forthcoming in this regard. Certainly, its conduct is not sanctionable." (Doc. 97, at 5 n.1)

destroyed." The use of the word shall leaves no wiggle room for Compass in this regard and certainly does not contemplate that defendant could blame its inability to provide the dates and manner of destruction of documents on the fact that it paid an independent contractor to destroy the documents in question. As pointed out by Continental, to determine the date and manner of destruction of any particular group of documents, such as teller tapes, all Compass need do is reference correspondence with its independent contractor, Iron Mountain. Even if determining such information is not as easy as outlined, it matters not because the order specifically dictates that Compass is to provide such information to Continental. Defendant's failure to provide to Continental the date and manner of destruction of the teller tapes must result, not only, in Compass being again ordered to produce such information to Continental on or before the close of business on **August 10, 2005**, but also that the defendant be sanctioned for its failure to follow the Court's specific instructions contained in its May 20, 2005 order. . . .

Defendant makes a similar harmless error argument regarding the microfilmed checks and deposit slips about which it admits that it did not provide plaintiff with the method(s) of destruction and dates of destruction. (Doc. 75, at 3-4) According to Compass, plaintiff has received from its insured copies of all of the subject checks and that it produced most of the deposit [s]lips for checks deposited after August of 1997 and since a six-year statute of limitations applies to plaintiff's claims "it is hard to conceive how deposit slips dated prior to November 1998 could possibly be relevant to this case." (*Id*.) Again, it really matters not what plaintiff has or has not received in terms of relevant documents. What matters is Compass Bank's failure to follow this Court's order and inform Continental of the method(s) of destruction of the microfilmed checks and deposit slips and the dates of destruction of same, information which it easily could have procured from its independent contractor. Compass is **ORDERED** to inform Continental of the method(s) of destruction of the microfilmed checks and deposit slips and the dates of destruction on or before **August 10, 2005**.

18

As to the account opening documents, Compass is **ORDERED** to inform plaintiff, to the best of its knowledge, whether these documents [we]re destroyed pursuant to the same procedure [] outlined in Seavey Webb's affidavit. (*Compare* Doc. 67, at 6 *with* Doc. 75, at 4) This information is to be supplied to Continental on or before **August 10, 2005**.

Finally, with respect to the monthly statements electronically stored on defendant's "Mobius" archiving system, Compass argues that "it appears that plaintiff is seeking sanctions for what it characterizes as defendant's insufficient explanation for destruction of documents that are not relevant to its claims in this case." (Doc. 75, at 5) The defendant's argument that these documents have a "tenuous" or "no" relationship to this case is of no moment since it was ordered to provide plaintiff with specific information regarding destroyed documents, including the reasons the documents were destroyed. Accordingly, on or before **August 10, 2005**, Compass is to outline for Continental all reasons for the destruction of the monthly statements if other reasons for destruction exist beyond the programming of the "Mobius" system to delete such documents from the system after seven years.

(*Id.* at 5-7 & 8-10 (footnote and emphasis in original))[6]

7.     On August 10, 2005, Compass Bank filed the following response to the foregoing order of July 29, 2005:

---

[6]     This order also contains the following footnote: "During oral argument on June 28, 2005, plaintiff's counsel argued extensively that McNichols' affidavit attempt to answer interrogatory 10 was undermined by his deposition testimony and counsel also argued that plaintiff had evidence that the defendant had a 'Know Your Customer Rule' contrary to the position taken by defendant. The undersigned does not consider the import of such oral arguments, however, because they relate to the original motion to compel and not to Compass Bank's failure to obey the undersigned's May 20, 2005 Order. As the Court clearly instructed the plaintiff, with respect to such issues plaintiff is required to renew its motion to compel within the discovery period and support same with additional evidence. (Doc. 51, at 8)" (Doc. 97, at 10 n.4)

1.      Defendant on April 5, 2005, produced its Policy & Procedures for the Records Retention Compliance and Control Program, designated as COM02884-COM02904, and attached hereto as Exhibit A. As reflected in COM02890, the established Records Destruction Procedures followed by Compass Bank presently consist of the following steps for destruction of routine records:

a.      Quarterly, a Purged Notification Report will be generated and given to the Procurement Department. This report will be distributed to the Division Finance Managers for review.

b.      This report will be reviewed and the Division Finance Manager is required to submit an approval e-mail (within two weeks) to the Expense Management Department that the destruction of the identified boxes is approved.

c.      All eligible records will be systematically destroyed under appropriate procedures.

Defendant is also producing herewith as Exhibit B the July 14, 1997 version of its policies and procedures for the records retention compliance and control program, designated COM03071 through COM03087. These reflect that there has been little change in such destruction and retention procedures over the past eight years.

2.      *Teller tapes*.  These are subject to the same records destruction policy described above. Page 14 of the Policies and Procedures for the Records Retention Compliance and Control Program (COM02897) requires that "Teller Work" be retained for one year. The affidavit of Seavey Webb, attached hereto as Exhibit C, details the reason why and the process by

which the teller tapes were destroyed[.][7] . . . Mr. Webb's affidavit is accompanied by two exhibits that identify the teller

---

[7]       Webb's affidavit reads, in relevant part, as follows:

I am presently employed by Compass Bank as Operations Manager in its Cash Balancing Department. . . .

At the request of a representative of Compass Bank's Legal Department, I have investigated to determine the date of destruction, the method of destruction, and the specific reasons for the destruction of teller tapes and account opening documents that have been generated in Compass Bank branches and that have thereafter been retained by the bank here in Birmingham. Such documents are destroyed, when it is time for them to be destroyed, at the Iron Mountain facility that Compass Bank has retained to destroy documents that are no longer required to be maintained or retained.

With regard to both teller tapes and account opening documents, I have determined that the reason for the destruction of all documents in either category is to comply with the record retention schedule adopted by the bank. Similarly, I have determined that the method of destruction of such documents utilized at the Iron Mountain facility was formerly an acid bath, after which the remnants of the destroyed documents were recycled for use in toilet paper production; more recently, the procedure has been changed and the documents are now cross-shredded. I have been unable to ascertain the precise date on which the change was made.

To determine the dates of destruction of the teller tapes, I requested a list from the Iron Mountain facility identifying the destroyed boxes of teller tapes and the dates on which they were destroyed. I have attached hereto as Exhibit A a list identifying the boxes of teller tapes from Mobile branches that have been destroyed. I later received a second list that is attached hereto as Exhibit B, which identifies the dates of destruction of the various teller tape boxes.

I was also asked to determine the method of destruction of microfilm and microfiche at the Iron Mountain facility, and I conducted a similar inquiry in this regard. I was advised by Iron Mountain personnel that Compass Bank microfilm and microfiche are destroyed there in a shredder.

(Doc. 102, Affidavit of Seavey Webb)

21

tapes from the Mobile branches that were destroyed and the dates on which they were destroyed, as required by the Court's recent order.

3.   *Checks and deposit slips*.  These are subject to the records destruction policy described above. Page 13 of the record retention policy (COM02896) requires that DDA and savings research fiche and film be retained for seven years. Mr. Webb's affidavit establishes that the method of destruction for microfilm or microfiche records at Iron Mountain is and was shredding. The attached affidavit of Betty McDonald explains her research relative to such microfilm.[8] . . .

---

[8]     McDonald's affidavit reads, in relevant part, as follows:

I am presently employed by Compass Bank as a Senior Vice President. . . .

     I was asked by a representative of Compass Bank's Legal Department to ascertain how and when copies of checks and deposit slips for Compass Bank account number 36535989 for the periods of time prior to February of 1998 were destroyed, as well as to ascertain how and when copies of account statements for that account for periods prior to August of 1997 were destroyed.

     The checks and deposit slips are to be destroyed at the Iron Mountain facility by shredding after the microfilmed copies had been retained for the period required in the Record Retention policy, which required retention of such microfilm for seven years. I learned that in practice such microfilm is retained until December of the year in which the seven year deadline passes, and then all microfilm that reached the seven year mark in such year is destroyed in one operation. Because a hold was placed on such records after the lawsuit was filed, the bank now has microfilm reflecting checks and deposit slips from 1996 and 1997. Microfilm copies of checks and deposit slips for 1995 would have been destroyed by shredding in December of 2002.

     Account statements have been maintained on the Mobius system since July of 1997, but they are electronically deleted from that system on the seventh year anniversary date for each such statement. Thus, for example, on August 1, 2005, the bank statements retained on the Mobius system for July 1998 would have been electronically deleted automatically. Prior to their retention on Mobius, such statements were maintained on microfiche, and were subject to the same

        4.    *Account opening documents*. Such documents are subject to the same record destruction policy as is described above. Page 13 of the record retention policy requires that new account set up forms be retained for two years. Mr. Webb's affidavit establishes that the reason for the destruction of account opening documents, and the methods by which they have been destroyed, are the same as the reason and the methods for the destruction of teller tapes described in paragraph 2, above.

        5.    *Account statements*.  These are subject to the same destruction policy identified above with regard to checks and deposit slips, and are required to be retained for the same seven year period. During the period of time before the Mobius system was used for the retention of past account statements, they were retained on microfiche and were subject to the same destruction practices and methods as are and were used for check and deposit slip film and fiche described in paragraph 3, above. . . .

(Doc. 102, at 1-4)

        8.    On September 12, 2005, plaintiff filed what it described as its second motion to compel, therein seeking the production of personnel files it claimed were responsive to Requests for Production numbers 21and 25 from

---

destruction policies and procedures that are described above with regard to checks and deposit slips. I have located microfiche copies of account statements for the period from January 23, 1997, through July 17, 1997. Microfiche of checks and account statements for 1996 would have been destroyed by shredding in December of 2003 and without this microfiche we would not be able to locate any information on the 1996 microfilm. Microfiche of account statements for 1995 would have been destroyed by shredding in December of 2002.

(Doc. 102, Affidavit of Betty McDonald)

its first set of requests for production of documents. (Doc. 120; *see also* Doc. 125 (corrected motion)) While the first motion to compel filed by Continental did relate, in part, to request for production number 25, citation to this request for production in Continental's first motion was never made in relation to the seeking of personnel files. This motion to compel was denied by the undersigned by order dated November 9, 2005. (Doc. 182)

> Document Request No. 25 simply cannot be read as requesting personnel files and reading it in that manner would lead to a much more expansive reading of this request for production than is contemplated by Rule 34(b) of the Federal Rules of Civil Procedure. . . . The plaintiff, of course, desires such an expansive reading of Document Request No. 25 because that is the only conceivable basis for it to be able to get the personnel files of Jennifer Gaston and all other Crichton branch employees. . . . However, the undersigned declines to read Request for Production No. 25 as plaintiff desires, and, therefore, **DENIES** plaintiff's second motion to compel to the extent it seeks the "entire" personnel files of Jennifer Gaston and all other Crichton branch employees.

(Doc. 182, at 7-8 (emphasis in original; footnote omitted))

9.     On September 27, 2005, Continental served upon counsel for Compass a revised notice of deposition relating to the 30(b)(6) depositions of the bank's corporate designees to be taken on September 29 and 30, 2005. (Doc. 158, REVISED NOTICE OF DEPOSITION)[9] Compass, in fact,

---

[9]     The revised notice simply stated a different time for the deposition. (Doc. 158, Deposition of Sharon Branson, at 96)

produced four witness in response to Continental's notice, as revised. (Doc.

167, at 14) The parties are in agreement that Compass produced Sharon

Branson as its corporate designee on the following eight discrete topics, as

well as others (*compare* Doc. 158, at 18 *with* Doc. 167, at 14):

> 9.    The opening, maintenance, and closing of the Relevant Account(s), as defined above, and all related documentation.

> 11.    All overdrafts, cashiers' checks, wire transfers, telephone transfers, and transactions above $2,500 involving the Relevant Account(s) during the Relevant Period.

> 12.    Compass' knowledge of the Customer(s) and the Insured, including but not limited to Radney Funeral Home, both as defined above.

> 13.    Any investigation conducted relating to the check fraud scheme as described in the Complaint and the Revised First Amended Complaint.

> 14.    Any subsequent remedial measures taken by Compass, including any changes in policies or procedures, following discovery of Howe's check fraud scheme.

> 15.    Compass' filing of any suspicious activity report related to the subject matter of the action, and communications with any law enforcement or regulatory authority concerning the subject matter of this action.

> 16.    (a) All records and information concerning (i) the opening and/or handling of deposit accounts or (ii) the acceptance and/or handling of checks, deposits or other items of the following employees: Jennifer Taylor, Jeanette Taylor, Pam Jackson, Ollie Green, Tracy Alexander, Celeste Barlow, Natasha

25

Barnhill, Barbara Basinger, Sharon Cunningham, Dorothy Dinkins, Valerie Dow, Sarah Edwards, Regina Franklin, Jennifer Gaston, Shelia Gordon, Karron Griffin, Jeanna Marie Kenny, Andrea Longcrier, Mary Martin, Amelia Mass, Michael McMullen, Salena McKinnis, Catherine McPherson, Tina Moody, John Naughton, Martena Nies, Daniel Owen, John Patton, Jessica Phillips, Tabitha Pugh, Betty Reynolds, Ivy Savage, Ronald Scott, Helen Sylvester, Rhonda Turner, Lebreon Washington, Lawandra Williams, Terri Williams, Vivian Windsor, and any other employee who during the Relevant Period worked at the Crighton branch or opened or performed any transaction with the Relevant Accounts or Relevant Checks.

(b)  All records and information concerning any criticism, incidents, losses or adverse employment action for any of the above employees, including while at another branch.

19.   Compass' retention and destruction of all documents requested in Plaintiff's Request for the Production of Documents and all documents identified in Compass' answers to Plaintiff's Interrogatories.

(Doc. 158, REVISED NOTICE OF DEPOSITION, at 4, 5 & 6)

10.   Presently before this Court for consideration is Continental's omnibus motion to the district court for sanctions entering judgment against Compass Bank, striking of defenses or other appropriate relief arising from spoliation of evidence, violation of discovery and sanctions orders and submission of false affidavits filed on October 18, 2005  (Doc. 158). This motion reads, in part, as follows:

[A]s to Compass' spoliation of evidence, after months of unsuccessful attempts to ascertain basic account information as

26

to Elaine Howe's fraud account - including multiple motions to compel and court orders requiring the production of such information and imposing sanctions – Continental has recently learned through the admission of a Compass employee that Compass altered its records in late May or June 2002 to delete "c/o Radney Funeral Home" from the account name. This deletion came after Howe had been arrested, after Compass had turned away SCI's fraud investigator when he requested information about Howe's fraud scheme, and even after Compass had received a subpoena from the Mobile District Attorney's office on May 16, 2002 for Howe's records.

After Continental learned of this inexplicable destruction of key evidence, its counsel attempted to question Compass' Rule 30(b)(6) witness about this deletion, as well as other topics. The witness, having admitted that she had looked at but a handful of documents for one of Howe's eight accounts at Compass and prepared for only a couple hours, was utterly unable to testify as to Compass' knowledge regarding this deletion, nor many other topics. As a matter of law, this constitutes a failure to appear for the deposition by Compass and calls for sanctions.

In addition to destroying evidence or failing to provide required testimony, Compass has withheld relevant documents and even taken the further step of providing false information in the form of affidavits submitted to this Court. Specifically, Compass has submitted affidavits from its personnel claiming that account opening documents for Howe's accounts are unavailable, but its own employees have admitted under oath that such documents would have been maintained in Compass' Birmingham office since at least the time of law enforcement subpoenas in May and September 2002. Despite repeatedly representing and affirming to the Court that certain relevant documents did not exist, Compass recently provided certain of these very documents at the close of fact discovery, after all pertinent fact depositions of Compass were taken, and after the opportunity to question any Compass personnel about such

documents had expired (other than one fact witness and under a Rule 30(b)(6) notice).

Viewed separately or in totality, these numerous acts of discovery abuse by Compass have effectively thwarted Continental's efforts to uncover the truth of this fraud scheme and Compass' full involvement therein, and to properly support its summary judgment motion, oppose Compass' similar motions, and otherwise prepare for trial. Moreover, Compass' conduct has violated the rules of discovery and direct orders of this Court. As a result, Continental now seeks the strongest sanctions available to the Court to attempt to remedy Compass' continual and flagrant abuse of discovery and the judicial process in this case.

.     .     .

The signature card for Howe's fraud account was incomplete (no. 36535989, COM00371, Ex. A) and account opening documentation was missing, conveniently preventing disclosure of basic identifying information, including Social Security number, identification provided, address, phone number, and employer (then Radney Funeral Home and SCI), normally obtained by Compass on account opening. Apr. 27, 2005 Motion to Compel, at 11-13 (Request No. 7). Compass also failed to produce opening documentation for all known accounts (nos. 36535989, 38174754, 78752882, 80612176, 81446857 and 11945427), which later totaled eight. Compass' procedures specifically required the collection of information in a Customer Account Information Form, Ex. U, COM03051 (rev. Nov. 1994), yet such completed forms and/or corresponding electronic information were never produced or fully provided to Continental.

While Compass had for months denied the existence of "customer profile" documents, plaintiff finally received nine incomplete profile pages printed as of April 20, 2005 which showed the name of Howe's fraud account (no. 36535989) was

Elaine H. Howe, without any inclusion of "c/o Radney Funeral Home" in the name. Ex. C, COM03287-95. The profiles showed that Howe was employed by Radney, the drawer of the checks, but otherwise the profiles were missing Howe's telephone number, address, job title, among other fields that are blank, and contained several blank pages for "Customer Commercial Information" for Howe's accounts that could only relate to a business account (Ex. C, at COM03290-92). Profile information would have existed in electronic form at various points in time and well before the post-complaint April 20, 2005 print-out if the remaining information had not been purged from Compass' computer system. Apr. 27, 2005 Motion to Compel, at 14-15 (Request No. 9).

Compass further failed to produce necessary account modification documentation that reflected (a) the closing of Howe's accounts, and (b) address or other changes, which occurred several times on the eight accounts. Apr. 27, 2005 Motion to Compel, at 14-15 (Request No. 9).

Compass also failed to produce the initial monthly statements for [] Howe's fraud account no. 36535989 for the period July 10, 1995, through August 8, 1997. Apr. 27, 2005 Motion to Compel, at 15 (Request No. 11). Compass also failed to produce relevant fraud checks and deposit slips for the period 1996-1997. *Id.* at 16 (Request No. 12).

(Doc. 158, at 1-3 & 4-5)

11.    On December 5, 2005, this Court entered an order which denied plaintiff's motion for sanctions for defense counsel's misconduct at various depositions but found that defense counsel had improperly cut short the deposition of Sharon Branson by one hour and ten minutes. (Doc. 192) Accordingly, the Court extended to plaintiff the opportunity to depose Branson

29

by telephone for an additional one hour and ten minutes. (*Id*.)

> Allowing plaintiff to take a one hour and ten minute supplemental telephonic deposition of Branson also answers plaintiff's concern over defense counsel insisting on a lunch break during what plaintiff has termed a "critical line of examination regarding the Bank's spoliation of electronic records[,]" (Doc. 153, at 7), particularly since plaintiff has presented to this Court a different motion for sanctions regarding the Bank's alleged spoliation of electronic records (Doc. 173, at 3 ("Specifically, counsel broke up a critical line of examination regarding Compass' spoliation of electronic records, which has since become the subject of Continental's contemporaneous motion for sanctions against Compass.")). **Should plaintiff obtain from Branson any helpful information regarding the alleged spoliation of electronic records, the Court hereby grants Continental leave to amend its motion for sanctions (Doc. 158) with such testimony.**

(Doc. 192, at 7-8 (emphasis supplied))  Though the contents of the foregoing order appear to be very pointed, Continental chose to read same broadly to file a longer brief than it filed in the first instance (*compare* Doc. 233 *with* Doc. 158) and to focus same not upon Compass' alleged spoliation of electronic documents (*see* Doc. 233, at 27-33) but, instead upon Branson's alleged failure to appear for her 30(b)(6) deposition (*id*. at 2-26). To the extent plaintiff attached anything to its supplemental submission beyond the supplemental testimony of Branson, such evidence is **STRUCK** and is not considered by the undersigned in relation to the omnibus motion for sanctions.

## CONCLUSIONS OF LAW

### A.   Spoliation.

1.     It is plaintiff's contention that Alabama substantive law applies to its allegation of spoliation of evidence by Compass Bank. (Doc. 158, at 8-14; *see also* Doc. 172, at 2-5; Doc. 189, at 2-6) Plaintiff is completely wrong in this regard, as the Eleventh Circuit, just days before plaintiff filed its omnibus sanctions motion (Doc. 158, filed October 18, 2005), addressed whether to apply state law or federal law to the issue of spoliation sanctions and specifically determined that "federal law governs the imposition of spoliation sanctions[] . . . because spoliation sanctions constitute an evidentiary matter." *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. October 5, 2005) (citations omitted). Though the Eleventh Circuit found federal law controlling and noted that "[d]ismissal represents the most severe sanction available to a federal court," *id.*, it also recognized that federal courts may necessarily need to examine state factors to the extent they are "wholly consistent with federal spoliation principles." *Id.*

2.     Interestingly, even though plaintiff's primary authority for filing its motion for sanctions is grounded upon Rule 37 of the Federal Rules of Civil Procedure (Doc. 158, at 1 ("Plaintiff . . . **pursuant to Rule 37**, hereby moves

the District Court for sanctions including, *inter alia*, entering judgment against Defendant, Compass Bank [], striking Compass' defenses, or other appropriate relief, arising from Compass' spoliation of evidence, violation of discovery and sanction orders, and submission of false affidavits to the Court.")), it quickly shuns the rule upon determining that it, in its own words, is contrary to Alabama law which recognizes that "[d]ismissal for failure to comply with a request for production may be warranted even when there was no discovery pending or even litigation underway at the time the evidence in question was discarded or destroyed." *Vesta Fire Ins. Corp. v. Milam & Co. Constr., Inc.,* 901 So.2d 84, 93 (Ala. 2004) (citation omitted). (Doc. 158, at 8) This Court, however, is not persuaded by plaintiff's argument and does not accept as controlling this proposition of Alabama law since, as plaintiff admits, it is contrary to Rule 37 of the Federal Rules of Civil Procedure. It is obvious to the undersigned that the Eleventh Circuit would not determine this proposition of Alabama consistent with federal spoliation principles.

3.    Because plaintiff relies only on Alabama cases which deal with evidence destroyed prior to litigation, on the admitted allegation that Compass Bank altered (or destroyed) evidence prior to the institution of this case in 2004 (*see, e.g.,* Doc. 158, at 10 & 11 ("On September 28, 2005, after the close

of fact discovery . . . Jennifer Taylor Decker, the Compass employee who Compass now claims opened the acknowledged fraud account, confirmed as other Compass witnesses have been forced to admit, that the name of the account, as reflected on the account statements prior to June 2002 was clearly 'ELAINE H. HOWE C/O RADNEY FUNERAL HOME.' . . . **Ms. Decker testified that after May 9, 2002, the account name was altered to delete 'c/o Radney Funeral Home,' as the last account statement for the period May 10, 2002 through June 10, 2002 demonstrates.** . . . Compass altered its records **after** discovery of Howe's fraud scheme and **after** SCI's security investigator had visited Compass Bank in or around late March 2002, regarding Howe's scheme . . . and **even after** Compass Bank had been served with a subpoena by the Mobile District Attorney's Office on May 16, 2002 for Howe's records." ) (some emphasis supplied; other emphasis in original)), and there has been no showing by plaintiff that federal spoliation law is akin to Alabama law such that dismissal, or some other sanction, is warranted where a party destroys (or alters) evidence prior to litigation, the undersigned declines plaintiff's invitation to sanction defendant for actions it took prior to the filing of the instant law suit by Continental. Continental has supplied this Court with no evidence that Compass altered its records after the filing of the

lawsuit; therefore, this Court finds no basis upon which to find that Compass

acted in bad faith and, consequently, no basis to sanction Compass, by

dismissal, for its alleged spoliation of evidence or for granting plaintiff any

lesser sanction. *Cf. Flury, supra,* 427 F.3d at 944-945 ("Dismissal . . . should

only be exercised where there is a showing of bad faith and where lesser

sanctions will not suffice. . . . No lesser sanction will suffice in this case. The

record reveals that plaintiff knew the location and condition of the subject

vehicle for a considerable amount of time following the accident. Moreover,

plaintiff was fully aware that defendant wished to examine the vehicle.").[10]

**B.     Compass' Alleged Submission of False and Misleading**

---

[10]     The undersigned cannot perceive how any lesser sanction will harm Compass' position in this case any more than the testimony of its own witnesses, if such testimony is as harmful to Compass as Continental would suggest. Continental can argue the testimony of Compass' witnesses for all its worth; however, since any alleged alteration on the fraud account came about before Continental filed its law suit against Compass there is no basis under federal law to sanction Compass, by dismissal or the striking of defenses, for such action or happenstance. Of course, Continental need be wary where it would trod given the defendant's credible software change explanation to account for what plaintiff has described as Compass' spoliation of evidence. (*See* Doc. 239, Exhibit C, Affidavit of Don Miley, at 2 ("Compass Bank installed [] Pitney-Bowes software and began to run its deposit accounts through the software for the first time in May of 2002. As a result of beginning to run this software in May of 2002, changes were made without any human intervention on many deposit accounts, including Account No. 36535989. The software made two changes with respect to Account No. 36535989 in May of 2002. First, it changed the zip code from a five-digit zip code to a nine-digit zip code. **Second, it changed the 'c/o Radney Funeral Home' from a name line to an address line. As a result, statements sent after that date showed the name on this account as 'Elaine J. Howe' and the 'c/o Radney Funeral Home' line printed on the statement with the address**."))

**Affidavits and Withholding of Related Documents**.

4.      Continental's argument in this regard boils down to the following five paragraphs, or portions thereof, contained in its motion:

> Compass had copies of these records [i.e, monthly statements and checks and deposit slips] in its Research Department that Compass only recently produced and made available. Specifically, Ms. Matthews, Compass' Research Department manager and corporate designee on Compass' communications with law enforcement testified on the last day of discovery that the Research Department possessed three files consisting of copies of documents that were produced in response to May and September 2002 subpoenas for Howe's records. These documents produced in response to subpoena were subject to a seven-year retention period, running from 2002 and therefore would not have been subject to any potential destruction until 2009.

> Incredibly, Ms. Matthews admitted that these documents were not identified in her May 2005 affidavit in response to the Magistrate's Order, nor produced to plaintiff, until possibly August 2005. Worse yet, Ms. Matthews' supervisor, Betty McDonald[,] failed to acknowledge the existence of these documents in her August 2005 affidavit even following the Magistrate's Sanctions Order of July 27, 2005. Apparently, certain of these documents may have been belatedly produced without explanation by Compass in September 2005. Only after Ms. Matthews' damaging testimony, has Compass now offered Plaintiff an opportunity to inspect these withheld records by letter of October 10, 2005, *after* the close of discovery, and *after* all fact depositions have been taken in the case.

.      .      .

> During the deposition of Seavey Webb, a corporate designee of Compass Bank, Plaintiff discovered that Compass'

35

branches had teller drawer/cash box key logs corresponding to assigned teller stamp and numbers. These tellers' numbers then appeared on deposit slips for each transaction. Combining the deposit slip and log for a particular day would reveal the Compass employee who handled the transaction. Compass knew about the logs, but failed to disclose them to Plaintiff or the Court until their existence was revealed during Mr. Webb's deposition on the last day of discovery.

Moreover, Compass' assertion that teller tapes that could have identified tellers with respect to Ms. Howe's transactions are no longer available due to destruction based on Mr. Webb's affidavit cannot be sustained. This affidavit is misleading, as Mr. Webb acknowledged at deposition, in that it did not account for any teller tapes prior to July 1, 1997, nor did he check the destruction list to confirm that the specific teller tapes for the days at issue in this case after July 1, 1997, were in fact destroyed. Instead, he just "scrolled down the list" to see that Mobile branches were included.

Taken together, on a critical issue of who accepted Howe's fraudulent deposits, Compass' conduct in withholding of relevant information and otherwise providing misleading affidavits has frustrated plaintiff's discovery and misled this Court, and warrants the imposition of the most severe sanctions by this Court.

(Doc. 158, at 16 & 17-18 (internal citations omitted))[11]

_____

[11]    To the extent that Continental intends to suggest to this Court that Compass still has in its possession certain documents that it sought through discovery (Doc. 172, at 7 (contending that the Court is left with "the inference that the account opening documents still exist")), the undersigned would simply note that such suggestion plays no part in this order inasmuch as Continental has not again sought to compel the production of any allegedly withheld documents as invited by the Court in its May 20, 2005 Order (Doc. 51) nor can it now move to compel production of these documents (id. at 8 ("This partial denial of the motion to compel is without prejudice to plaintiff seeking the same or similar relief once it has received and reviewed a certification to be provided by Compass no later than May 25, 2005, so long as the request for a second review of issues raised in this motion to compel is accompanied by

5.      In support of its argument, Continental relies almost solely upon this Court's decision in *In re Amtrak "Sunset Limited" Train Crash in Bayou Canot, Alabama on September 22, 1993*, 136 F.Supp. 1251,1257 (S.D.Ala.), *aff'd*, 29 Fed.Appx. 575 (11th Cir. 2001),[12] wherein it was determined that plaintiff Gary Farmer had perpetrated a fraud upon the Court and the defendants by knowingly providing false answers in his answers to interrogatories. This Court specifically noted that "'a "fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.'" *Id*. at n.11, quoting *Aoude v. Mobil Oil Corp*., 892 F.2d 1115, 1118 (1st Cir. 1989). It is plaintiff's position that the affidavits of Webb, Matthews and McDonald have misled this Court and frustrated its discovery on the critical issue of which teller accepted Howe's fraudulent deposits. (Doc. 158, at 18)

---

additional evidence **and is filed within the discovery period**.")).

[12]      The only other case substantively cited by Continental, *Bryte v. American Household, Inc.,* 142 Fed.Appx. 699 (4th Cir. 2005), provides no persuasive authority inasmuch as it is an unpublished decision.

6.      Plaintiff, in its submissions, however, has not "clearly and convincingly" demonstrated to this Court that Compass, through the submission of the affidavits of Matthews, Webb and McDonald, has either improperly influenced this Court's rulings[13] or frustrated its efforts to determine which teller accepted Howe's fraudulent deposits.[14] Turning first to Webb's August 10, 2005 affidavit and his September 30, 2005 deposition testimony, plaintiff contends the affidavit is "misleading . . . in that it did not account for any teller tapes prior to July 1, 1997, nor did he check the destruction list to confirm that the specific teller tapes for the days at issue in this case after July 1, 1997, were in fact destroyed." (Doc. 158, at  18) The undersigned does not find Webb's affidavit misleading and Webb certainly never acknowledged that it was misleading during his deposition. Webb never inserted any date in his

---

[13]      Again, the undersigned notes that the Court invited plaintiff to re-file a motion to compel directed to the very interrogatories and requests for production about which it was claiming Compass had not been entirely forthcoming. (Doc. 51, at 8) Instead of filing such a motion prior to the close of discovery, as required by the Court, plaintiff, instead, simply seeks extreme sanctions against Compass. Accordingly, the undersigned stays focused solely upon the issue of sanctions and will not address any implication by Continental that surely there must be other responsive documents out there which Compass has failed to produce.

[14]      The simple answer to this latter argument, of course, is the obvious one that one teller did not accept all of Howe's fraudulent deposits. Putting aside the fancifulness of plaintiff's conspiracy theory argument that would tie Howe to one particular teller, or teller supervisor, at Compass' Crichton branch and that such person was involved in her fraud, the fact remains that Continental has deposed all of the tellers and has not one shred of evidence from those witnesses suggesting that one of them was directly involved in Howe's fraud.

38

affidavit and as he stated during his deposition he specifically instructed Iron Mountain to provide him "with a list of all boxes as far as they can go back that have been destroyed," (Doc. 158, Deposition of Howard C.V. Webb, Jr., at 124) and his attachments to his affidavit reflect the information sent to him by Iron Mountain (*compare id. with* Doc. 102, Webb aff. & Exhibits A & B).[15] Therefore, the fact that no teller tapes were accounted for prior to July 1, 1997 does nothing other than reflect that Iron Mountain's records went back no further than July 1, 1997. (*See* Doc. 102, Exhibits A & B to Webb aff.) Turning to McDonald's August 10, 2005 affidavit, the undersigned finds nothing particularly unconscionable or pernicious about Compass Bank's Senior Vice President's failure to acknowledge in her affidavit the existence of the documents about which Matthews acknowledged existed during her September 30, 2005 deposition (*see* Doc. 158, Matthews depo., at 36-40)[16] inasmuch as plaintiff has not shown that McDonald had any actual knowledge of the existence of such documents, same being in a file on Matthews' desk

---

[15]    The argument that Webb did not check the destruction list to confirm that the specific teller tapes for the days at issue were in fact destroyed really makes no sense to the undersigned. As Webb testified during his deposition, "[w]e cannot go to Iron Mountain and ensure that these are destroyed. We rely on Iron Mountain to destroy the boxes." (Doc. 158, Webb depo., at 127) It is clear to the undersigned that the boxes sent to Iron Mountain involving those "crucial days" Continental makes reference to were destroyed. (*See* Doc. 102, Exhibits A & B to Webb aff.)

[16]    That is, there was no misleading "by omission."

and in one to three files in a filing cabinet in the research department. McDonald's affidavit was addressed to the requirements of the Court's July 27, 2005 order regarding the bank's destruction of documents; nothing about that order required McDonald to scour the research department to make sure there were no responsive documents prior to addressing the bank's policy on destruction of documents. Therefore, McDonald's affidavit was neither false nor misleading.

7.     The only problem for Compass relative to plaintiff's false/misleading affidavit argument is the May 20, 2005 affidavit of Erica Matthews. Matthews' affidavit necessarily must be read to suggest that Compass Bank's research manager had unearthed no documents in the bank's possession which related in any way to the two subpoenas served upon the bank in the summer of 2002 (Doc. 58, Matthews aff.), yet at her September 30, 2005 deposition Matthews admitted that she, in fact, had certain monthly account statements from 1996 and 1997 in a 2002 subpoena file or files (Doc. 158, Deposition of Erica Matthews, at 36-40). Compass, therefore, does not argue that Matthews' affidavit was not misleading in this regard. What the defendant does argue, however, is that Continental was not prejudiced by any falsity contained in that document inasmuch as Continental had in its

possession at the time of Matthews' deposition, as a result of a subpoena served on the Alabama Department of Revenue, the very documents about which Matthews gave testimony. (*See* Doc. 167, at 10) While Compass' argument in this regard ultimately persuades the Court that the bank has not perpetrated a fraud upon the Court, for purposes of granting plaintiff a default judgment or striking the bank's defenses,[17] it goes without saying that had Matthews been more diligent in her search for documents in May of 2005, Continental would have come into possession of the aforementioned monthly account statements in May, in response to plaintiff's first set of interrogatories and requests for production, as opposed to June of 2005. Accordingly, Rule 37(b) monetary sanctions are appropriate given Matthews' negligent representation that she knew of no documents in the bank's possession related

---

[17] The undersigned would note that the plaintiff has not satisfied its burden of establishing that it is entitled to entry of a judgment in its favor for any reason set forth in its omnibus motion for sanctions. That is, plaintiff has not established that Compass Bank has willfully and in bad faith disregarded the orders of this Court and, therefore, it is not entitled to entry of the ultimate sanction of a judgment in its favor. *See Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985) ("[T]he decision to enter a default judgment [as a sanction under Rule 37(b)(2)(C)] ought to be the last resort- ordered only if noncompliance is due to willful or bad faith disregard of court orders."); *Teletron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 129 (S.D.Fla. 1987) ("[A] court's discretion to impose sanctions under Rule 37--particularly the entry of default or dismissal of an action--is limited by important constitutional and policy considerations. . . . The imposition of a default judgment as a Rule 37 sanction is controlled by the same guidelines as the entry of a dismissal order. . . . Both are extreme remedies which should only be imposed if less drastic sanctions cannot properly redress the wrongdoing.").

to the subpoenas served during the summer of 2002 and due to her failure to revise her affidavit to acknowledge that she had unearthed these documents (*see* Doc. 58, Matthews aff. ("[I]f there are additional records or documents there that relate in any way to either of these subpoenas, I will supplement this affidavit to describe them.")).  The issue of the amount of monetary sanctions to be imposed will be taken up at the conclusion of the trial on the merits of the case and will take the form of a small portion of the attorney's fees expended by plaintiff in filing the omnibus motion for sanctions, provided plaintiff's attorney files, on or before **March 7, 2006**, a good-faith estimate of the time spent pursuing this single issue. The undersigned will take up at the conclusion of this case the reasonableness of the attorney's fees requested by plaintiff and enter an appropriate sanctions award against Compass Bank.

### C.     Compass Bank's Alleged Failure to Appear at its Rule 30(b)(6) Deposition.

8.     Rule 37(d) of the Federal Rules of Civil Procedure provides that "[i]f a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice . . . the court in which the action is pending on motion

may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.[18] . . . In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.* (footnote

---

[18]    Rule 37(b)(2) and subparagraphs (A), (B), and (C) read, as follows:

If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A)  An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B)  An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence; [and]

(C)  An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

*Id.*

added).[19] It is the consensus of most federal courts to have considered the issue that a failure to appear at deposition sanctionable under Rule 37(d)(1) includes those circumstances in which a 30(b)(6) corporate designee appears at deposition unprepared to testify. *Black Horse Lane Assoc., L.P., supra,* 228 F.3d at 304 ("[W]e hold that when a witness is designated by a corporate party to speak on its behalf pursuant to Rule 30(b)(6), '[p]roducing an unprepared witness is tantamount to a failure to appear' that is sanctionable under Rule 37(d)."); *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D.Kan. 1999) ("'Producing an unprepared witness is tantamount to a failure to appear at a deposition.' . . . The court may find lack of preparation at a deposition to be a failure to appear."); *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C.) ("Producing an unprepared witness is tantamount to a failure to appear."), *order aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996).

> Rule 30(b)(6) streamlines the discovery process. It places the burden of identifying responsive witnesses for a corporation on the corporation. Obviously, this presents a potential for abuse which is not extant where the party noticing the deposition specifies the deponent. When a corporation or association designates a person to testify on its behalf the corporation appears vicariously through that agent. If that agent is not knowledgeable about relevant facts, and the principal has failed

---

[19]    "[U]nlike subdivision (b) of Rule 37, on its face subdivision (d) does not require the court, prior to imposing sanctions, to have issued an order compelling discovery." *Black Horse Lane Assoc., L.P. v. Dow Chemical Corp.*, 228 F.3d 275, 302 (3rd Cir. 2000).

44

> to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.

*Resolution Trust Corp. v. Southern Union Co., Inc.,* 985 F.2d 196, 197 (5th Cir. 1993).

9.    In *Poole ex rel. Elliott v. Textron, Inc.,* 192 F.R.D. 494 (D. Md. 2000), the court explained at some length the duties and responsibilities of a corporation and its counsel upon being served with a 30(b)(6) notice of deposition outlining areas of inquiry.

> Rule [30(b)(6)] provides that an organization named as a deponent "shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify . . . a person so designated shall testify as to matters known or reasonably available to the organization." *Id*. Thus, a corporation "should make a diligent inquiry to determine what individual(s) is (are) best suited to testify." Civil Discovery Standards (American Bar Association, Section of Litigation, August 1999) ("ABA Standards").

> Moreover, a corporation served with a Rule 30(b)(6) notice of deposition has a duty to "produce such number of persons as will satisfy the request [and] more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation." *Marker v. Union Fidelity Life Ins. Co.,* 125 F.R.D. 121, 126 (M.D.N.C. 1989). "Counsel for the entity should prepare the designated witness to be able to provide meaningful information about any designated area(s) of inquiry." ABA Standards, 19(f) (Duty to Prepare the Witness). The individual(s) so deposed are required

45

to testify to the knowledge of the corporation, *not* the individual. *United States v. J.M. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996). . . . It necessarily follows that the corporation has a duty "to prepare the designees so that they may give knowledgeable and binding answers for the corporation" and that this duty "goes beyond matters personally known to the designee or to matters in which that designee was personally involved." *Taylor*, 166 F.R.D. at 361.

Upon notification of a deposition, the corporation has an obligation to investigate and identify and if necessary prepare a designee for each listed subject area and produce that designee as noticed.

.     .     .

A party cannot take a laissez faire approach to the inquiry. That is, producing a designee and seeing what he has to say or what he can cover. A party does not meet its obligations under . . . Rule 30(b)(6) by figuratively "throwing up its hands in a gesture of helplessnes[.]" . . . If the originally designated spokesman for the corporation lacks knowledge in the identified areas of inquiry, that does not become the inquiring party's problem, but demonstrates the responding party's failure of duty.

*Id*. at 503-504 & 504 (footnote omitted; emphasis in original); *see also Starlight, supra*, 186 F.R.D. at 639 ("Corporations, partnerships, and joint ventures have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter. . . . If the designated persons 'do not possess personal knowledge of the matters set out in the deposition notice, the [entity] is obligated to prepare the

46

designees so that they may give knowledgeable and binding answers for the [organization].' . . . '[I]f it becomes obvious during the course of a deposition that the designee is deficient, the [organization] is obligated to provide a substitute.'"); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 150 & 151 (S.D.N.Y. 1997) ("While Rule 30(b)(6) 'is not designed to be a memory contest[,]' . . . the deponent must be both knowledgeable about a given area and prepared to give complete and binding answers on behalf of the organization. . . . The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources."); *United States v. Taylor, supra*, 166 F.R.D. at 361 ("The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not of the individual deponents. . . . Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. . . . The Rule 30(b)(6) designee does not give his personal opinions. Rather, he presents the corporation's "position" on the topic. . . . Moreover, the designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions. . . .

47

The corporation must provide its interpretation of documents and events.").[20]

10.      It is with these legal principles in mind, along with  the noticed areas of inquiry, that the undersigned read the entirety of Branson's 30(b)(6) deposition taken on September 29, 2005 (Doc. 158, Deposition of Sharon Branson) as well as her supplemental deposition on December 15, 2005 (Doc. 233, Exhibit A). Having read Branson's initial and supplemental depositions, the undersigned is at once struck by how little time the deponent spent readying herself for the 30(b)(6) deposition. (Doc. 158, Deposition of Sharon Branson, at 91-92 (she spent a total of three hours reviewing materials, merely glancing at some))[21] Branson conducted no investigation into the matter regarding the bank's role in the case (*id*. at 94)[22] and spent a scant one and one-half hours meeting with Compass Bank's attorney, George Walker, Esquire, prior to the  September 29, 2005 30(b)(6) deposition (*id*. at 95). Despite this

---

[20]      The undersigned is mindful of one District Court's view that before a trial court may impose sanctions upon a party for failure to appear under Rule 37(d)(1), "'the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas.'" *Bank of New York, supra*, 171 F.R.D. at 151, quoting *Zappia Middle East Constr. Co., Ltd.  v. Emirate of Adu Dhabi*, 1995 WL 686715, at *8 (S.D.N.Y. 1995).

[21]      Branson received a voice-mail from an attorney for Compass in Birmingham on Friday, September 16, 2005, requesting that she be the corporate designee; she accepted this assignment on Monday, September 19, 2005. (*Id*. at 92-93)

[22]      *See Poole, supra,* 192 F.R.D. at 504 ("Upon notification of a deposition, the corporation has an obligation to **investigate** and identify and if necessary prepare a designee for **each** listed subject area and produce that designee as noticed.").

*laissez faire* attitude toward preparation, the undersigned cannot find that Branson wholly failed to appear for purposes of entering a default judgment against Compass or striking any of the defendant's defenses, *see Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("[T]he district court's discretion under Rule 37 is broad but not unlimited. The limits placed on this discretion have been fashioned in light of the recognition that dismissal under Rule 37 'is a sanction of the last resort, applicable only in extreme circumstances. . . . A finding of such extreme circumstances necessary to support the sanction of dismissal must, at a minimum, be based on evidence of the sanctioned party's willfulness, bad faith or fault in failing to comply with a discovery order."), inasmuch as, in truth, Branson did appear and give significant testimony with respect to several areas of inquiry listed on the revised notice of deposition (*id.* at 289-340 (Bank's position on Items 10 and 17(b) set out in the revised notice of deposition); *see also id.* at 253 (answered Item 14 with testimony that Compass took no subsequent remedial measures following discovery of Howe's check fraud scheme)). Nonetheless, Branson could not give Compass' position on several other areas of inquiry noticed by the plaintiff (*see, e.g, id.* at 107-108 (relevant to Item 12, the witness did not know what the Bank's knowledge of SCI, the insured, was between 1995 and 2002); *id.* at 245

(relevant to Item 13, Branson could not testify on behalf of the bank on what date outside counsel was hired to conduct an investigation into Howe's check fraud scheme); *id*. at 259 (relevant to Item 15, Branson admitted that she was "not prepared to testify on behalf of the bank as to any communications the bank had with Federal regulatory authorities[]" and admitted, moreover, that she did not know who the federal regulatory authority might be); *compare id*. at 266-272 (relevant to Item 16(b), Branson admitted that she had not pulled the HR records on Jennifer Gaston or Helen Sylvester) *with* Doc. 233, December 15, 2005 Deposition of Sharon Branson, at 14 (designee again admits that she did not read any of the "separation" memoranda in Sylvester's personnel file in preparation for her deposition) and 51-52 (Branson stated she did not have Compass' HR records with her and needed same to determine that status of Gaston's employment); Doc. 158, Branson depo., at 114-115 (relevant to Item 11, Branson testified that she had no knowledge of the bank's knowledge of any items over $2,500.00 involving any of Howe's accounts with Compass), and though Compass' counsel often made the argument that objections were lodged to these areas of inquiry and that same were not relevant to this law suit (*see, e.g., id*. at 126 ('[W]e would note that this is questioning on a completely irrelevant topic relating to an account that's not

involved in the check fraud scheme in this case, relating to non-sufficient funds that have no relations at all to any issue in this case. We have the witness here and ready to testify on behalf of the bank in response to relevant questions regarding the circumstances involved in this case, and I don't think Rule 30(b)(6) requires that we produce a witness for a fishing expedition on irrelevant, immaterial matters."); *id*. at 148 ("Once again, it's an irrelevant account. It doesn't have anything to do with this lawsuit."); *id*. at 268 & 270 ("We objected and have objected and filed an objection to this particular request because it seeks information that's not relevant to the subject matter of this lawsuit. . . . Well, we have objected and the witness is here and she's ready to testify if you want to show her some records as you mentioned in 16(b)."), such argument cannot wholly shield defendant from sanctions since Compass failed to obtain a protective order preventing plaintiff's counsel from delving into these noticed areas of inquiry, *see* Fed.R.Civ.P. 37(d) ("The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)."). In other words, defense counsel could object to his heart's content on the basis that, for instance, inquiry into all of Howe's accounts at Compass, save for the fraud

51

account, was irrelevant but in absence of a protective order, at least in this particular case,[23] the 30(b)(6) designee was required to give the bank's position on all questions regarding each account.[24]

11.    In light of the foregoing, the undersigned determines that Compass Bank should be sanctioned for the failure of its corporate designee, Sharon Branson, to "appear," as that phrase is understood,[25] for several areas of inquiry noticed by the plaintiff in its revised notice of deposition. The appropriate sanction does **NOT** include entry of a judgment in the plaintiff's

---

[23]    It is not lost on this Court, nor should it be lost on the parties, that the discovery phase of this case has been the one of the most contentious the undersigned has ever observed in his career as a Magistrate Judge, and while, in most cases, the parties would not be presenting the type of discovery motions that have become routine in this case, the realities of this case are that counsel appear more focused on garnering their pound of flesh as opposed to adjudicating the merits of the action.

[24]    The undersigned recognizes that a problem thread throughout the 30(b)(6) designee's deposition was the fact that many of the documents plaintiff's counsel made reference to in a general manner (i.e., opening, maintenance, and closing documents) do not exist because of Compass' destruction of same pursuant to their retention policy. However, given the manner in which plaintiff's counsel posed questions regarding documentation, the deponent often stated that she did not review such documentation on behalf of the defendant or that she had no knowledge on the bank's behalf regarding same instead of explicitly stating that she could not answer on the basis that the bank's records relating to the particular account she was being questioned about, as the bank's designee, no longer existed. The "confusion" created by the deponent's answers to Mr. Ludwig's general questions, however, reflect nothing more or less than the deponent's general lack of preparedness for several areas of inquiry noticed by the plaintiff. *See Poole, supra,* 192 F.R.D. at 503 ("[C]ounsel for the entity should prepare the designated witness to be able to provide meaningful information about **any** designated area(s) of inquiry.").

[25]    In other words, Branson was wholly unprepared to state the bank's position regarding several areas of inquiry.

favor or the striking of any defense asserted by Compass; instead, the appropriate sanction is found to be an order, pursuant to Rule 37(d), that Compass pay to Continental all costs and attorney's fees associated with the actual taking (as opposed to preparation time) of Branson's 30(b)(6) deposition on September 29, 2005, provided the plaintiff file an itemization of the costs and fees associated with the taking of this deposition on or before **March 17, 2006**. As with all other monetary sanctions entered in this case, the undersigned will take up at the conclusion of this case the reasonableness of those costs and fees and enter an appropriate sanctions award against Compass Bank.

## <u>CONCLUSION</u>

Plaintiff's omnibus motion for sanctions (Doc. 158) is due to be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff has not proven its allegation of spoliation of evidence nor has it shown that the defendant should be sanctioned for any of its transgressions by entry of a judgment in plaintiff's favor or the striking of defenses asserted by Compass Bank. However, it is clear to the undersigned that Compass Bank should be sanctioned for the negligent representation in Erica Matthews' affidavit that she knew of no documents in the bank's possession related to the subpoenas served during the

summer of 2002 as well as Matthews' failure to revise her affidavit acknowledging the discovery of these documents. As set forth in the body of this order, the issue of the amount of monetary sanctions to be imposed will be taken up at the conclusion of the trial on the merits of the case and will take the form of a small portion of the attorney's fees expended by plaintiff in filing the omnibus motion for sanctions, provided plaintiff's attorney files, on or before **March 17, 2006**, a good-faith estimate of the time spent pursuing this single issue. In addition, defendant is due to be sanctioned for the failure of its corporate designee, Sharon Branson, to appear for the 30(b)(6) deposition **prepared** to give knowledgeable and binding answers for the corporation on **all** areas of inquiry noticed by the plaintiff. The appropriate sanction in this regard, which will be considered following a merits decision, will be an order that Compass Bank pay to Continental all costs and attorney's fees associated with the actual taking (as opposed to preparation time) of Branson's 30(b)(6) deposition on September 29, 2005, provided the plaintiff file an itemization of the costs and fees associated with the taking of this deposition on or before **March 17, 2006**.

  **DONE** and **ORDERED** this the 3rd day of March, 2006.

   s/WILLIAM E. CASSADY
   **UNITED STATES MAGISTRATE JUDGE**